Jonathan Stoler
Lindsay R. Colvin
Scott T. Earl
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
*Attorneys for Coach, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

DANIELLE DINELEY,

                        Plaintiff,

              -against-

COACH, INC.,

                     Defendant.

             Case No. 1:16-cv-03197 (DLC)(JLC)

------------------------------------------------------------- x

## COACH, INC.'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................3

ARGUMENT ..............................................................................................................................3

I.    This Court Should Grant Coach's Motion Because There Are No Genuine Issues Of
      Material Fact That Require A Trial ..................................................................................3

II.   Plaintiff's Overtime Claims Fail Because She Was Exempt Under The
      Administrative And Executive Exemptions To The FLSA And The NYLL........................4

      A.    The Administrative Exemption To The FLSA And NYLL .......................................5

      B.    The Executive Exemption To The FLSA And NYLL ..............................................6

      C.    Plaintiff's Work As An Executive Assistant In Coach's HR Department
            Clearly Satisfied The Administrative Exemption ........................................8

      D.    Plaintiff's Work As An Executive Assistant In Coach's Design Department
            Also Plainly Satisfied The Administrative Exemption ...............................11

      E.    Plaintiff Also Qualified For The Executive Exemption During Her Tenure In
            The Design Department ...........................................................................14

III.  Plaintiff's Disability Discrimination Claims Should Also Be Dismissed............................16

      A.    Plaintiff's Allegations Do Not Support A Constructive Discharge Claim Or A
            Hostile Work Environment Claim As A Matter Of Law ..............................16

      B.    Plaintiff Also Cannot Establish A *Prima Facie* Case Of Discrimination
            Under The ADA Or The NYCHRL ..........................................................20

            1.    It Is Undisputed That Coach Granted Plaintiff Each And Every
                  Accommodation She Requested...................................................20

            2.    Plaintiff Did Not Experience Any Adverse Employment Actions That
                  Would Arguably Substantiate A Discrimination Claim...................21

            3.    The Circumstances Do Not Support An Inference Of Unlawful
                  Discrimination ..........................................................................22

C.      Even If Plaintiff Could Establish A *Prima Facie* Case Of Discrimination, She Cannot Rebut Coach's Legitimate, Non-Discriminatory Business Reasons For Its Actions ........................................................................................................25

CONCLUSION ........................................................................................................26

TABLE OF AUTHORITIES

Page(s)

Cases

*Altemus v. Federal Realty Investment Trust*
490 F. App'x 532 (4th Cir. 2012)............................................................................*passim*

*Barounis v. N.Y.C. Police Dep't*
No. 10 Civ. 2631 (SAS), 2012 WL 6194190 (S.D.N.Y. Dec. 12, 2012) ......................20

*Bellone v. Kraft Power Corp.*
No. 15-CV-3168, 2016 WL 2992126 (E.D.N.Y. May 23, 2016) .....................................8

*Blue v. Finest Guard Servs.*
No. 09 CV 133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010) ...........................6

*Brown v. Eli Lilly and Co.*
654 F.3d 347 (2d Cir. 2011)...........................................................................................4

*Cadet v. Deutsche Bank Sec., Inc.*
No. 11 Civ. 7964 (CM), 2013 WL 3090690 (S.D.N.Y. June 18, 2013) .......................17

*Chertkova v. Conn. Gen. Life Ins. Co.*
92 F.3d 81 (2d Cir. 1996)..............................................................................................17

*Cody v. Cnty. of Nassau*
345 F. App'x 717 (2d Cir. 2009).....................................................................................3

*Curtis v. Airborne Freight Corp.*
87 F. Supp. 2d 234 (S.D.N.Y. 2000) ...........................................................................24

*Eichler v. Am. Int'l Grp., Inc.*
No. 05 Civ. 5167 (FM), 2007 WL 963279 (S.D.N.Y. Mar. 30, 2007) .........................18

*Farzan v. Wells Fargo Bank, N.A.*
No. 12 Civ. 1217(RJS)(JLC), 2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013)................24

*Flaherty v. Metromail Corp.*
59 F. App'x 352 (2d Cir. 2002)....................................................................................17

*Goenaga v. March of Dimes Birth Defects Found.*
51 F.3d 14 (2d Cir.1995)................................................................................................4

*Gonzalez v. N.Y. State Office of Mental Health*
907 N.Y.S.2d 100 (Sup. Ct. 2010) ...............................................................................19

*Guinup v. Petr-All Petroleum Corp.*
No. 5:07-CV-1120, 2010 WL 3338800 (N.D.N.Y. Aug. 23, 2010) ....................5, 14, 15

*Hicks v. Baines*
    593 F.3d 159 (2d Cir. 2010) ........................................................................................4

*Hongyan Lu v. Chase Inv. Servs. Corp.*
    412 F. App'x 413 (2d Cir. 2011) ...........................................................................20, 25

*Johnson v. City Univ. of N.Y.*
    No. 17-CV-587 (VEC), 2014 WL 4412475 (S.D.N.Y. Sept. 8, 2014) ........................24

*Johnson v. IAC/Interactive Corp.*
    2 F. Supp. 3d 504, 517 (S.D.N.Y. Feb. 24, 2014) .....................................................19

*Krupinski v. Laborers E. Region Org. Fund*
    No. 15-cv-982 (RJS), 2016 WL 5800473 (S.D.N.Y. Oct. 2, 2016) ..............................6

*Kurian v. Forest Hills Hosp.*
    962 F. Supp. 2d. 460 (E.D.N.Y. 2013) ......................................................................17

*Lane v. Systems Application & Techs., Inc.*
    No. DKC-13-3566, 2015 WL 1013449 (D. Md. Mar. 6, 2015) ............................*passim*

*Lawson v. Avis Budget Car Rental*
    No. 15-cv-01510 (GBD), 2016 WL 3919653 (S.D.N.Y. July 12, 2016) ........................7

*Lewis v. City of Buffalo Police Dep't*
    311 F. App'x 417 (2d Cir. 2009) ...............................................................................24

*Lugo v. N.Y.C.*
    518 F. App'x 28 (2d Cir. 2013) .................................................................................23

*Mayling Tu v. OppenheimerFunds, Inc.*
    No. 10 Civ. 4971(PKC), 2012 WL 516837 (S.D.N.Y. Feb. 16, 2012) ........................24

*McDonnell Douglas Corp. v. Green*
    411 U.S. 792 (1973) .................................................................................................20

*McLee v. Chrysler Corp.*
    109 F.3d 130 (2d Cir. 1997) .....................................................................................20

*Mercado v. N.Y.C. Housing Authority*
    No. 95 Civ. 10018 (LAP), 1998 WL 151039 (S.D.N.Y. Mar. 31, 1998).......................3

*Mercury Air Group, Inc. v. Perez*
    No. 00 Civ. 2975(HB), 2001 WL 88228 (S.D.N.Y. Jan. 31, 2001) ............................18

*Miller v. Praxair, Inc.*
    408 F. App'x 408 (2d Cir. 2010) ...............................................................................17

*Morris v. Lindau*
    196 F.3d 102 (2d Cir. 1999) ................................................................................4, 23

*Newsome v. IDB Capital Corp.*
No. 13-CV-6576 (VEC), 2016 WL 1254393 (S.D.N.Y. Mar. 28, 2016) ...................................19

*Oncale v. Sundowner Offshore Servs., Inc.*
523 U.S. 75 (1998) .................................................................................................................24

*Onofre Polanco v. 34 St. Partnership, Inc.*
724 F. Supp. 2d 420 (S.D.N.Y. 2010) ...................................................................................18

*Pearson v. Board of Education*
499 F. Supp. 2d 575 (S.D.N.Y. 2007) ...................................................................................24

*Peters v. Mt. Sinai Hospital*
No. 08 Civ. 7250 (CM), 2010 WL 1372686 (S.D.N.Y. Mar. 30, 2010) ...................................19

*Pikoris v. Mt. Sinai Medical Center*
No. 36 Civ. 1403 (JEK), 2000 WL 702987 (S.D.N.Y. May 30, 2000) .....................................22

*Seltzer v Dresdner Kleinwort Wasserstein*
356 F. Supp. 2d 288 (S.D.N.Y. 2005) ..........................................................................*passim*

*Senno v. Elmsford Union Free School Dist.*
812 F. Supp. 2d 454 (S.D.N.Y. 2011) .......................................................................................4

*Shafer v. Am. Univ. in Cairo*
No. 12-CV-9439 (VEC), 2014 WL 3767007 (S.D.N.Y. July 31, 2014) ....................................23

*St. Mary's Honor Center v. Hicks*
509 U.S. 502 (1993) .........................................................................................................20, 25

*Turner v. NYU Hosp. Ctr.*
784 F. Supp. 2d 266 (S.D.N.Y. 2011) ....................................................................................20

*Vinokur v. Sovereign Bank*
701 F. Supp. 2d 276 (E.D.N.Y. 2010) ....................................................................................21

*Wechsler v. R D Mgmt. Corp.*
861 F. Supp. 1153 (E.D.N.Y. 1994) .......................................................................................19

*Yesmin v. Rite Aid of New York Inc.*
No. CV 10-4157(ERK) (RER), 2012 WL 38171735 (E.D.N.Y. Sept. 6, 2012) ....................7, 15

<u>Statutes</u>

42 U.S.C. § 12101 *et seq.* .........................................................................................................1

29 U.S.C. § 201 *et seq.* ..........................................................................................................1, 4

Fed. R. Civ. P. 56 ......................................................................................................................3

N.Y. Lab. Law § 190 *et seq.* ........................................................................................ 1

N.Y. Lab. Law § 650 *et seq.* ........................................................................................ 1

N.Y. Lab. Law § 651 ...................................................................................................... 4

N.Y.C. Admin. Code § 8-101 *et seq.* ............................................................................ 1

<u>Other Authorities</u>

29 C.F.R. § 541.100 ........................................................................................................ 7

29 C.F.R. § 541.102 ........................................................................................................ 7

29 C.F.R. § 541.105 .................................................................................................... 8, 15

29 C.F.R. § 541.200 .................................................................................................... 5, 6

29 C.F.R. § 541.201 ........................................................................................................ 5

29 C.F.R. § 541.202 ........................................................................................................ 6

29 C.F.R. § 541.203 ........................................................................................................ 5

29 C.F.R. § 541.700 .................................................................................................... 5, 7

12 NYCRR § 142-2.14 ............................................................................................... 6, 7

## PRELIMINARY STATEMENT

Plaintiff Danielle Dineley ("Plaintiff") is a former Executive Assistant who worked at Coach, Inc.'s ("Coach") corporate headquarters from January 2011 to September 2015. During her employment, Plaintiff first supported two senior executives in the Human Resources ("HR") Department and then a senior executive in the Design Department until she resigned, effective September 4, 2015, after providing two weeks' notice. At the time of her resignation, the undisputed evidence establishes that Plaintiff was: (i) providing critical support to a senior executive, (ii) managing and assigning work to two lower-level Administrative Assistants, (iii) earning a base salary and bonus of more than $100,000 and (iv) had recently received a satisfactory performance evaluation with a rating of "solid performance." By Plaintiff's own admission, Coach and her supervisor fully accommodated Plaintiff's claimed disability, including by providing Plaintiff with approximately five weeks of leave in 2014 to seek treatment for drug and alcohol addiction and by adjusting Plaintiff's schedule to allow her to attend outpatient treatment after she returned to work. Further, Plaintiff's own testimony establishes that even before Plaintiff identified herself as having an alleged disability, Plaintiff viewed the senior executive that she supported, Laura Beasley ("Beasley"), as demanding and did not like her hands-on management style. In light of the undisputed evidence in the record, Plaintiff's claims that: (i) she was misclassified and should have been paid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (2016) ("FLSA") and the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* and § 650 *et seq.* (2016) ("NYLL"); and (ii) she was constructively discharged and discriminated against in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (2016) ("ADA") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* (2016) ("NYCHRL") should be rejected, and Coach's motion for summary judgment ("Motion") should be granted in its entirety.

With regard to Plaintiff's overtime claims, the record shows that Coach properly classified Plaintiff as exempt from the overtime requirements of the FLSA and the NYLL at all relevant times.  Plaintiff was paid on a salary basis well in excess of the statutory minimums, and her primary job duties routinely required her to exercise discretion and independent judgment to carry out tasks that were critical to the operations of the departments to which she was assigned.  In addition, Plaintiff supervised and managed the work of two Administrative Assistants in the Design Department on a daily basis and interviewed, made hiring recommendations and assisted with the orientation and on-boarding of new employees.  Indeed, this Court need only review Plaintiff's written self-assessments of her performance, which detail the multiple job duties she undertook as an Executive Assistant, to conclude that she was properly classified as exempt from the FLSA's and NYLL's overtime requirements as an administrative employee when working in Coach's HR Department, and as both an administrative and executive employee when working in Coach's Design Department.

Plaintiff's claims that she was constructively discharged based on her alleged disability and requests for accommodations are similarly meritless and should be dismissed.  These claims are premised entirely on a handful of innocuous comments allegedly made by Beasley following Plaintiff's 2014 leave of absence, such as asking Plaintiff: "Are you okay?" and "Is everything all right?", and commenting to Plaintiff that she was "Letting everything fall apart" and that "This isn't a 9-5 job."  However, these patently neutral remarks are neither severe or pervasive indicia of discriminatory animus nor sufficient to show that Plaintiff's working conditions were so intolerable as to support a constructive discharge claim.  In fact, the record is devoid of any evidence that Beasley's alleged comments were based on Plaintiff's alleged medical condition or her having taken a medical leave of absence.  Rather, the undisputed evidence, including Plaintiff's own admissions, shows that Beasley fully supported Plaintiff's efforts to seek

treatment, granted every accommodation she requested, gave her satisfactory performance ratings, and was responsible for awarding Plaintiff a 2015 bonus that more than doubled the bonus she received prior to taking her leave of absence.  Moreover, the record shows that Plaintiff waited until she received her 2015 bonus payment and then voluntarily gave Coach two weeks' notice of her resignation – hardly an indication that she considered her working environment to be so intolerable as to support a constructive discharge claim.

Plaintiff's disability discrimination claims are further belied by the fact that Plaintiff's terms and conditions of her employment remained the same following her return to work from medical leave.  Finally, the record shows that during Plaintiff's exit interview with a Coach HR representative, she stated that she was resigning only because she was unhappy with her 2015 performance review (which set forth the same satisfactory rating that she received in 2014) and because she no longer wished to report to Beasley, whom she considered to be a demanding boss. For all of these reasons, Plaintiff's overtime and disability discrimination claims are completely without merit, and Coach's Motion dismissing Plaintiff's claims should be granted.

## STATEMENT OF RELEVANT FACTS

Coach respectfully refers the Court to its Statement of Undisputed Material Facts pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York. ("56.1 Stmt.").

## ARGUMENT

I.  THIS COURT SHOULD GRANT COACH'S MOTION BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT REQUIRE A TRIAL

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Cody v. Cnty. of Nassau*,

345 F. App'x 717, 718 (2d Cir. 2009) (dismissing plaintiff's disability discrimination claims arising under the ADA and New York law); *Mercado v. N.Y.C. Housing Auth.*, No. 95 Civ. 10018 (LAP), 1998 WL 151039, at *6 (S.D.N.Y. Mar. 31, 1998) (granting summary judgment to employer and dismissing addiction-related disability discrimination claims under federal and state law).   In opposing a motion for summary judgment, the non-moving party may not rely on "unsupported assertions," "conjecture" or "surmise," and "must do more than simply show that there is some metaphysical doubt."  *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995); *see also Brown v. Eli Lilly and Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  Accordingly, "conclusory allegations or speculation" are insufficient to defeat summary judgment, *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999), and "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno v. Elmsford Union Free School Dist.,* 812 F. Supp. 2d 454, 467-68 (S.D.N.Y. 2011).  For the reasons set forth below, Plaintiff has utterly failed to meet her evidentiary burdens.

## II.    PLAINTIFF'S OVERTIME CLAIMS FAIL BECAUSE SHE WAS EXEMPT UNDER THE ADMINISTRATIVE AND EXECUTIVE EXEMPTIONS TO THE FLSA AND THE NYLL

The facts show that Plaintiff was properly classified and compensated as an exempt employee throughout her period of employment at Coach.  Both the FLSA and the NYLL render any individual employed in a "bona fide executive [or] administrative" capacity exempt from overtime pay. Fair Labor Standards Act, 29 U.S.C. § 213 (2016); N.Y. Lab. Law § 651 (2016).  Here, the record shows that Plaintiff qualified as an "administrative" employee while working as an Executive Assistant in both the HR and Design Departments.  Plaintiff also qualified for the "executive" employee exemption during her tenure as an Executive Assistant in the Design

Department because she helped manage that department and supervised at least two Administrative Assistants.  Accordingly, Plaintiff's overtime claims must fail.

### A.   THE ADMINISTRATIVE EXEMPTION TO THE FLSA AND NYLL

An individual qualifies for the FLSA's "administrative" employee exemption where: (1) the employee is "compensated on a salary or fee basis at a rate not less than $455.00 per week;" (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200 (2016).

Federal regulations make clear that executive assistants in large companies, like Coach, typically qualify for the administrative exemption:

> An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance.

29 C.F.R. § 541.203 (2016).

For purposes of the administrative exemption, the term "primary duty" means "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700 (2016).  There is no requirement that an employee spend a particular amount of her working time on a particular task for it to be considered the employee's primary duty.[1]  *Id.*

---

[1] Indeed, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support this conclusion."  *Id.*; *see also Guinup v. Petr-All Petroleum Corp.*, No. 5:07-CV-1120 (GTS/ATB), 2010 WL 3338800, at *8 (N.D.N.Y. Aug. 23, 2010) (rejecting employee's unsupported statement that she spent 80% of her time performing non-exempt work, but noting that "even assuming that Plaintiff is correct, time alone is not the sole test") (internal quotation marks omitted).  What is essential is that an employee's primary duties relate to the "management or general business operations of the employer . . . [and that the] employee must perform work directly related to assisting with the running or servicing of the business."  29 C.F.R. § 541.201 (2016).

Finally, an employee's primary duty must entail the exercise of "discretion and

independent judgment with respect to matters of significance."  29 C.F.R. § 541.200; 12 NYCRR

§ 142-2.14 (2016).[2]  However, the employee need not execute any particular decision on his or her

own.  Instead, "[t]he decisions made as a result of the exercise of discretion and independent

judgment may consist of recommendations for action rather than the actual taking of action." 29

C.F.R. § 541.202 (2016).  The regulations also make clear that "employees can exercise discretion

and independent judgment even if their decisions or recommendations are reviewed at a higher

level."  29 C.F.R. § 541.202; *see also Krupinski v. Laborers E. Region Org. Fund*, No. 15-cv-982

(RJS), 2016 WL 5800473, at *8-9 (S.D.N.Y. Oct. 2, 2016).

The NYLL's "administrative" employee exemption is substantively identical to the

FLSA's exemption set forth above, and New York courts routinely interpret the NYLL and FLSA

administrative exemptions similarly.[3]

## B.      THE EXECUTIVE EXEMPTION TO THE FLSA AND NYLL

An individual qualifies as an "executive" employee under the FLSA where: (1) the

employee is paid on "a salary basis of not less than $455 per week;" (2) the employee's "primary

---

[2] "Matters of significance" refer to "the level of importance or consequence of the work performed."  29 C.F.R. § 541.202 (2016).  The regulations provide that "[f]actors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; . . . whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; … whether the employee provides consultation or expert advice to management; [and] whether the employee is involved in planning long-or-short-term business objectives[.]"  *Id.*

[3] The NYLL's administrative employee exemption is identical to the FLSA's exemption, except that: (1) the minimum salary required to qualify for the exemption is $675 per week; (2) the employee is required to "customarily and regularly" exercise discretion and independent judgment (but not with respect to "matters of significance"); and (3) an employee must "regularly and directly assist[] an employer, or an employee employed in a bona fide executive or administrative capacity (*e.g.*, employment as an administrative assistant), or . . . perform[] under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge."  12 NYCRR § 142-2.14; *see also Blue v. Finest Guard Servs.*, No. 09 CV 133 (ARR), 2010 WL 2927398, at *9 n.14 (E.D.N.Y. June 24, 2010) ("[T]he NYLL is regularly interpreted similarly to the FLSA").

duty[4] is managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise;" (3) the employee "customarily and regularly directs the work of at least two or more other full-time employees or their equivalent;" and (4) the employee "has the authority to hire or fire other employees, or [the employee's] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100 (2016).  As with the administrative exemption, the NYLL's executive exemption is substantively identical to the FLSA.[5]

      The term "managing" in the context of the executive exemption (the second prong of the executive exemption test) encompasses a broad range of activities.  29 C.F.R. § 541.102 (2016).  Examples include: "interviewing, selecting, and training of employees . . . directing the work of employees . . . appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status . . . disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees . . . controlling the flow and distribution of materials or merchandise and supplies . . .[and] planning and controlling the budget."  *Id.*  New York courts routinely find that employees who engage in even some of these activities qualify for the executive exemption.  *See, e.g.*, *Lawson v. Avis Budget Car Rental*, No. 15-cv-01510 (GBD), 2016 WL 3919653, at *9 (S.D.N.Y. July 12, 2016); *Yesmin v. Rite Aid of N.Y. Inc.*, No. CV 10-4157(ERK) (RER), 2012 WL 38171735, at *5 (E.D.N.Y. Sept. 6, 2012).

---

[4] The meaning of the term "primary duty" in the executive exemption context is identical to its meaning in the administrative exemption context.  29 C.F.R. § 541.700.

[5] The NYLL's executive exemption is identical to the FLSA's exemption, except that: (1) the minimum salary to qualify for the exemption is $675 per week; and (2) to qualify as an executive employee, the employee must "customarily and regularly exercise[] discretionary powers."  12 NYCRR § 142-2.14.

Finally, the relevant regulations cite several factors for determining whether an employee's recommendations concerning another's employment status carry "particular weight" with his or her employer for purposes of the executive exemption, including "whether it is part of the employee's job duties to make such suggestions and recommendations . . . [and] the frequency with which such suggestions and recommendations are relied upon." 29 C.F.R. § 541.105 (2016). Significantly, an employee need not make such recommendations with any particular frequency to qualify for the executive exemption. *See Bellone v. Kraft Power Corp.*, No. 15-CV-3168, 2016 WL 2992126, at *5 (E.D.N.Y. May 23, 2016) (employee qualified for executive exemption under the FLSA and NYLL where he made four hiring recommendations to his employer over the course of his three-year period of employment).[6]

C.   **PLAINTIFF'S WORK AS AN EXECUTIVE ASSISTANT IN COACH'S HR DEPARTMENT CLEARLY SATISFIED THE ADMINISTRATIVE EXEMPTION**

Plaintiff clearly qualified for the administrative exemption to the FLSA and the NYLL throughout her employment in Coach's HR Department. Indeed, the undisputed facts show that Plaintiff primarily performed a host of exempt job duties as an Executive Assistant in the HR Department, all of which required Plaintiff to exercise discretion and independent judgment in matters of significance on a daily basis. (56.1 Stmt. ¶¶ 10-46).

Courts have routinely held that job duties similar to those performed by Plaintiff in Coach's HR Department satisfy the administrative exemption. For example, in *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, the plaintiff worked as a lead assistant to a senior executive. 356 F. Supp. 2d 288, 290-91, 302 (S.D.N.Y. 2005). The Court specifically noted that

---

[6] Indeed, an employee's recommendations may still be "deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105; *see also Bellone*, 2016 WL 2992126 at *5 ("Whether Plaintiff personally or unilaterally hired these individuals, or whether he had the ultimate say regarding who [his employer] would hire, is not determinative of his exempt status.").

she was employed as an "executive assistant" rather than as a non-exempt "administrative assistant," and that her daily responsibilities consisted largely of "arranging travel, scheduling appointments . . . answering the telephone, and completing expense reports." *Id*. at 292-93, 301. The plaintiff also made effective recommendations to her employer concerning certain personnel matters. *Id*. at 302. The Court held that these duties showed that the plaintiff qualified for the administrative exemption and granted summary judgment dismissing her FLSA claims. *Id*. at 301-02.

*Lane v. Systems Application & Techs., Inc.*, No. DKC-13-3566, 2015 WL 1013449 (D. Md. Mar. 6, 2015), is equally instructive. In *Lane*, the court ruled that an executive assistant to a senior executive qualified for the administrative exemption to the FLSA because she was responsible for: "managing [her supervisor's] calendar and ensuring that he had no scheduling conflicts and assigning time and dates for his meetings . . . preparing and submitting expense reports on his behalf . . .[and] drafting and preparing documents for his review and approval." *Id*. at *8. Like Plaintiff here, the plaintiff in *Lane* also served as a "Human Resource liaison" for certain of the company's employees, and in that capacity she "answer[ed] day-to-day HR questions from employees [and] respond[ed] to HR inquiries of personnel." *Id*. at *9, *11. The Court concluded that these primary job duties satisfied the administrative exemption under the FLSA and dismissed the plaintiff's overtime claims.

Finally, the facts in *Altemus v. Federal Realty Investment Trust*, 490 F. App'x 532 (4th Cir. 2012) are particularly notable given the Fourth Circuit's ruling that the administrative exemption applied to an executive assistant who performed many of the same job duties that Plaintiff performed while employed in Coach's HR Department. *Id*. at 532. The plaintiff in *Altemus* worked as the sole executive assistant to several of her former employer's senior executives. *Id*. at 532-34. Her primary job duties included "[m]anaging the day-to-day business of [the] CEO;

[handling] confidential information with discretion; prioritiz[ing] and handl[ing] external correspondence; screen[ing] incoming calls in the most professional manner; schedul[ing] meetings and maintain[ing] daily and long-term calendar . . . mak[ing] all necessary travel arrangements; [and] creat[ing] and maintain[ing] [a] comprehensive filing system," as well as preparing "slides and handouts for meetings."[7] *Id.* at 533-34, 536.  While the plaintiff claimed that she was micromanaged by her supervisor and that she performed largely clerical tasks, the Fourth Circuit squarely rejected her contentions and affirmed the trial court's grant of summary judgment and dismissal of the plaintiff's overtime claims.  *Id.* at 537-38.

Here, the record shows that Plaintiff regularly performed tasks that are nearly identical to those performed by the plaintiffs in *Seltzer, Lane* and *Altemus*.  The undisputed facts show, and Plaintiff admitted in her 2011 and 2012 self-evaluations, that Plaintiff's primary duties included: (i) managing the day-to-day business of the second most senior member of Coach's HR Department, including handling "confidential and highly sensitive information on a daily basis;" (ii) prioritizing and handling telephone calls and emails; (iii) independently prioritizing and scheduling meetings on Houck's and Crouse's daily calendars; and (iv) creating presentation materials for HR Department meetings and coordinating events and international travel arrangements.  (56.1 Stmt. ¶¶ 12, 44, 46).  It simply would not have been possible for Plaintiff to perform these critical tasks if she did not regularly exercise discretion and independent judgment to carry them out.  (56.1 Stmt. ¶¶ 44, 46).[8]  Moreover, Plaintiff considered herself a "point person" to interpret and explain HR Department policies to her co-workers and, like the exempt executive assistant in *Altemus*, independently "creat[ed] and implemented" a comprehensive new

---

[7] Altemus's salary was "nearly twice that of other non-exempt assistants," and in the final year of her employment she earned a salary of $86,520 with a $12,978 bonus.  *Id.* at 533, 537.

[8] Indeed, Plaintiff boasted in her self-evaluations and in her resume of the many ways she had exercised independent judgment to help manage matters of real significance for the HR Department and for Coach.  (56.1 Stmt. ¶¶ 44, 46).

-10-

organization and filing system for Crouse to help her work more efficiently.  (56.1 Stmt. ¶¶ 34-36).  Simply stated, Plaintiff's routine performance of these critical job duties in the HR Department equaled and, in many cases, surpassed those performed by the exempt executive assistants in *Seltzer, Lane* and *Altemus*.  Accordingly, Plaintiff's employment as an Executive Assistant in Coach's HR Department clearly qualified her for the administrative exemption under the FLSA and the NYLL, and her overtime claims should be dismissed.

     **D.**    **PLAINTIFF'S WORK AS AN EXECUTIVE ASSISTANT IN COACH'S DESIGN DEPARTMENT ALSO PLAINLY SATISFIED THE ADMINISTRATIVE EXEMPTION**

     Like her work in the HR Department, the Executive Assistant job duties Plaintiff performed in the Design Department c satisfied the administrative exemption under the FLSA and NYLL.  Specifically, the record shows, and Plaintiff admitted in her 2014 and 2015 self-evaluations, that Plaintiff performed many of the same executive assistant duties that supported the exemption findings in *Seltzer, Lane* and *Altemus*, including: (i) managing Beasley's daily schedule; (ii) serving as a gatekeeper for Beasley's meetings and screening and prioritizing incoming emails and calls; (iii) coordinating Beasley's travel arrangements; (iv) coordinating catered meetings and events; and (v) completing Beasley's expense reports.  (56.1 Stmt. ¶¶ 59-140).

     Moreover, the importance of the Design Department to Coach, and Plaintiff's role in supporting one of that department's most senior executives, cannot be overstated.  The record reflects that the Design Department was responsible for creating new and innovative products for Coach's stores worldwide, and that those products formed the basis for Coach's entire revenue stream.  (56.1 Stmt. ¶¶ 64-66).  Beasley reported directly to Coach's Executive Creative Director who, in turn, reported to Coach's CEO.  (56.1 Stmt. ¶ 51).  The record further shows that Plaintiff was Beasley's "right hand in the department" (56.1 Stmt. ¶ 106), and that Plaintiff independently

and routinely performed many other exempt job duties that were well beyond those typically deemed exempt under the relevant regulations and by this and other courts, including but not limited to: (i) scheduling and coordinating all aspects of the Design Department's "Design Time" meetings, which were the most frequent and important meetings held by the department; (ii) "manag[ing]" and "delegating projects and responsibilities to" two Administrative Assistants in the Design Department, and disciplining them when necessary; (iii) tracking the Design Department's $13 million annual budget and assisting with its administration; and (iv) a variety of other duties in which she routinely exercised discretion, independent judgment and management skills.[9] (56.1 Stmt. ¶ 59).

Plaintiff's coordination and management of the Design Time meetings perfectly illustrates the critical nature of her job duties and their significance to the Design Department.  The record shows that Design Time meetings were vitally important to the Design Department's business purpose and often resulted in new product conception, evolution and eventual production.  (56.1 Stmt. ¶¶ 64-66).  Plaintiff admits that she was responsible for coordinating these meetings and served as the "gatekeeper" for Design Time agendas.  (56.1 Stmt. ¶¶ 68-73).  The record further reflects that when designers submitted suggested agenda items to Plaintiff, she often had to evaluate the proposals, identify the most important information that meeting attendees and Coach's Creative Director should be aware of, and create a clear and concise summary of the agenda item to be circulated with the final schedule.  (56.1 Stmt. ¶ 72).  Moreover, while the Design Time agenda was subject to Beasley's ultimate approval, she often did not have time to see

---

[9] In addition to these job duties, the record also shows that Plaintiff: (i) managed the Design Department's product samples and supplies; (ii) retained authority to approve expense reports of varying amounts; (iii) coordinated and drafted various department manuals; (iv) independently managed catering for all Design Department meetings and events; (v) independently monitored supply levels and determined when supplies needed to be ordered and in what quantity; and (vi) coordinated and managed various facilities issues.  (56.1 Stmt. ¶¶ 107-36).

or approve the agenda before the meeting, meaning that the agenda for that day's Design Time meeting was solely the product of Plaintiff's discretion and independent judgment.  (56.1 Stmt. ¶ 73).

Finally, Plaintiff's exempt status is also supported by the fact that: (i) she earned a base salary of at least $90,000, which was approximately $40,000 more than either of the two Administrative Assistants she managed; and (ii) she played a leading role in interviewing, screening and recommending candidates for other Administrative Assistant and temporary assistant positions.  (56.1 Stmt. ¶¶ 78, 100-03).  Against these facts, the courts' decisions in *Seltzer*, *Lane* and *Altemus* are, again, highly instructive and compel the dismissal of Plaintiff's overtime claims as a matter of law.  *See, e.g., Seltzer*, 356 F. Supp. 2d at 293, 301-02 (dismissing executive assistant's overtime claims on findings that she: (i) earned a base salary of $90,000, plus a $30,000 bonus, which was significantly more than the employer's administrative assistants; (ii) made effective recommendations to her employer with respect to periodic hiring decisions, which were followed by her employer; and (iii) spent much of her working time "arranging travel, scheduling appointments . . . answering the telephone, and completing expense reports.").[10]  For all of these reasons, Plaintiff's overtime claims should be dismissed under the administrative exemption.[11]

---

[10]  *See also Lane*, 2015 WL 1013449 at *9 (finding that executive assistant qualified for the administrative exemption where she was "the supervisor of record for at least three employees, in which capacity she approved requests for leave, advised them about company policy . . . assign[ed] them work" and earned an annual salary of $82,000); *Altemus*, 490 F. App'x at 532-34 (finding that executive assistant was exempt from overtime under the administrative exemption where she served as senior executive's "right arm.").

[11]  Plaintiff's confirmation of her many managerial duties in her 2014 and 2015 self-evaluations, and her description of other exempt duties in the resume she drafted after she resigned from Coach (56.1 Stmt. ¶¶ 138-40), also compels the dismissal of her claims.  *Lane*, 2015 WL 1013449 at *10-11, *15-16 (dismissing executive assistant's claims and noting that, like Plaintiff here, she described many of her exempt job duties in a resume that she prepared after her employment ended).

E.    **PLAINTIFF ALSO QUALIFIED FOR THE EXECUTIVE EXEMPTION DURING HER TENURE IN THE DESIGN DEPARTMENT**

In addition to the administrative exemption, Plaintiff also qualified for the executive exemption to the FLSA and the NYLL while employed as an Executive Assistant in the Design Department.  The record shows that Plaintiff: (i) "managed" and "delegat[ed] projects and responsibilities to" two Administrative Assistants, Cottom and Dash; (ii) interviewed job candidates and made hiring recommendations for Administrative Assistants and her own temporary replacement that her supervisor adopted; (iii) monitored and reviewed her Administrative Assistants' job performance and disciplined them when appropriate; (iv) created and enforced certain work rules governing her Administrative Assistants' job duties and working hours; and (v) coordinated her Administrative Assistants' vacations and personal days off.  (56.1 Stmt. ¶¶ 74-103).  These indisputable facts, together with the extensive managerial job duties outlined below, show that Plaintiff regularly engaged in the requisite business management and supervisory job duties qualifying her for the executive exemption to the FLSA and NYLL and necessitating the dismissal of her claims.

The plaintiff's job duties in *Guinup v. Petr-All Petroleum Corp.*, are strikingly similar to those performed by Plaintiff here. 2010 WL 3338800 at *3-4.  In *Guinup*, the court ruled that the plaintiff qualified for the executive exemption to the FSLA and the NYLL because she: (i) completed performance evaluations for the employees she supervised; (ii) interviewed and trained new employees; (iii) was responsible for employee scheduling; (iv) recommended initial pay rates for new hires; (v) recommended disciplinary action; (vi) ordered inventory based on her observations of stock and need; and (vii) "proposed creative ideas to corporate management." *Id.* at *3-4.  The court determined that these duties qualified as "management activities" for purposes of the executive exemption, despite the fact that plaintiff also performed non-management duties

such as working the cash register and stocking shelves. *Id.* at *8.  In reaching this conclusion, the court stressed that the plaintiff qualified for the executive exemption, in part, because "she had the freedom to make recommendations as to hiring, setting initial pay rates, disciplining, and terminating employees." *Id.*  Significantly, the fact that the plaintiff's supervisors reviewed and sometimes overruled her recommendations was deemed irrelevant by the *Guinup* court, since "there is no requirement that an employer demonstrate 'complete freedom from supervision, such that [the employee] is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of [the executive exemption] inquiry.'" *Id.* at *9 (citation omitted).  For these reasons, the court dismissed the plaintiff's overtime claims under the executive exemption.[12] *Id.* at *11.

Here, beyond her supervision of Cottom and Dash, Plaintiff performed many other primary duties that federal courts have deemed relevant, such as: (i) auditing and independently ordering supplies; (ii) monitoring the Design Department's annual budget and expenditures, identifying areas of concern to Beasley, and recommending courses of action to help the department stay within its budget; and (iii) managing the Design Department's product samples and independently auditing the Department's sales results after sample sales.  (56.1 Stmt. ¶¶ 104-11, 114-19, 128-31). Even if Plaintiff argues that her decisions and recommendations were subject to Beasley's review, that oversight does not destroy Plaintiff's executive exemption status.  *See* 29 C.F.R. § 541.105; *Guinup*, 2010 WL 3338800 at *9.  Accordingly, because Plaintiff also qualified for the executive

---

[12] The court in *Yesmin v. Rite Aid of N.Y., Inc.*, No. CV 10-4157 (ERK) (RER), 2012 WL 3871735 (E.D.N.Y. Sept. 6, 2012), dismissed the plaintiff's overtime claims based on the executive exemption for similar reasons.  Specifically, the court found that the plaintiff assisted her store manager with a variety of exempt job duties, including monitoring other employees' performance, tracking the store's budget, handling inventory and ordering supplies, using discretion to resolve customer complaints, and was involved in hiring, reviewing and disciplining subordinate employees.  *Id.* at *6.

exemption as an Executive Assistant in the Design Department, this Court should dismiss all of her claims for overtime under the FLSA and NYLL in their entirety.

**III.   PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS SHOULD ALSO BE DISMISSED**

Plaintiff's disability claims under the ADA and the NYCHRL should also be dismissed. Plaintiff cannot show that anyone at Coach forced her to resign because of her alleged medical condition or accommodation requests, and she admits that Coach, indeed, reasonably accommodated her alleged disability at all times.

**A.    PLAINTIFF'S ALLEGATIONS DO NOT SUPPORT A CONSTRUCTIVE DISCHARGE CLAIM OR A HOSTILE WORK ENVIRONMENT CLAIM AS A MATTER OF LAW**

In her Complaint, Plaintiff alleged that Beasley "harassed and punished Plaintiff" for utilizing Coach's reasonable accommodations of her alleged disability, that she resigned because she was "[u]nable to tolerate [Beasley's] harassment [and] deriding comments" any longer, and that, "[u]nder the circumstances, this constituted a constructive discharge."  (Stoler Decl.,[13] Ex. A).  In support of her claims, however, Plaintiff relies entirely on a handful of innocuous comments that have no discernable relation to her alleged disability.  Specifically, Plaintiff contends that in the eight months after she returned from a leave of absence to attend inpatient rehabilitation services for substance abuse issues:

- Beasley allegedly "criticized and yelled at" Plaintiff.  (56.1 Stmt. ¶ 154).

- Beasley allegedly asked Plaintiff to let her know when she was leaving for the day, even if that entailed Plaintiff interrupting Beasley during a meeting to advise her that she had to leave the office.  (56.1 Stmt. ¶ 153).

- Beasley allegedly asked Plaintiff "Are you okay," "Is everything all right," "Is there anything going on with you," and stated "You're letting everything fall apart" after Plaintiff returned from her leave of absence, which, in Plaintiff's opinion and based on

---

[13] All references to "Stoler Decl." are to the Declaration of Jonathan Stoler, Esq., dated December 16, 2016, and submitted in support of Coach's Motion for Summary Judgment.

Plaintiff's perception of Beasley's "tone" and "body language," implied a judgment that she was drinking again.  (56.1 Stmt. ¶¶ 155, 159).

- Beasley allegedly once called Plaintiff "stupid."  (56.1 Stmt. ¶ 156).

- On one occasion, Beasley allegedly said to Plaintiff "you have a lot of personal issues and who knows how much of that has had an effect on your performance problems."  (56.1 Stmt. ¶ 156).

- Beasley purportedly told Plaintiff "this isn't a 9 to 5 job" and on another occasion, after a night that Plaintiff left early for outpatient treatment, commented "Yes, we were here very late.  A lot of people have to work late at night.  They don't all get to leave early like you." (56.1 Stmt. ¶ 157).

Plaintiff's allegations – even if true – are woefully inadequate to support a constructive discharge claim.  Indeed, the law is clear that "[a] voluntary resignation does not constitute an adverse employment action unless the plaintiff was constructively discharged – *i.e.*, the resignation was in fact *involuntary* as a result of coercion or duress."  *Cadet v. Deutsche Bank Sec., Inc.*, No. 11 Civ. 7964 (CM), 2013 WL 3090690, at *11 (S.D.N.Y. June 18, 2013) (emphasis in original).  Courts in this Circuit have stressed that the constructive discharge standard is "a demanding one, because a 'constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue to work for that employer' or that 'the employee's working conditions were difficult or unpleasant.'"  *Miller v. Praxair, Inc.*, 408 F. App'x 408, 409 (2d Cir. 2010) (quoting *Spence v. Md. Cas. Co.*, 995 F. 2d 1147, 1156 (2d Cir. 1993)).  Under New York law, working conditions are only "intolerable" and sufficient to support a constructive discharge claim if "they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Flaherty v. Metromail Corp.*, 59 F. App'x 352, 354 (2d Cir. 2002) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).  "[A] perception that the employee is being unfairly criticized, or exposure to difficult or unpleasant conditions does not rise to the level of a constructive discharge."  *Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 471 (E.D.N.Y. 2013) (citations omitted).

With these standards in mind, it is clear that Beasley's alleged comments to Plaintiff fall well short of the mark.  Plaintiff contends that Beasley criticized her performance, issued management directives that she disliked, and made other demands akin to being a "tough" boss. (56.1 Stmt. ¶ 55).  Such comments are plainly insufficient to support a constructive discharge claim.  *See, e.g., Miller*, 408 F. App'x at 410 ("[r]outine disagreements with supervisors or mild criticisms . . . are simply insufficient to establish the sort of 'intolerable' working conditions necessary to a constructive discharge claim").[14]  Plaintiff's constructive discharge claim is further belied by the fact that she provided Coach with two weeks' notice of her resignation, rather than simply resigning immediately.  (56.1 Stmt. ¶ 172).  Obviously, Plaintiff's willingness to work during a voluntary notice period shows that her working conditions were not "intolerable."  *See Onofre Polanco v. 34 St. P'ship, Inc.*, 724 F. Supp. 2d 420, 428 (S.D.N.Y. 2010) (fact that employee provided eight days' notice of resignation militated against constructive discharge claim); *Eichler v. American International Group, Inc.*, No. 05 Civ. 5167 (FM), 2007 WL 963279 at *18 (S.D.N.Y. Mar. 30, 2007) (granting employer summary judgment and dismissing constructive discharge claim where plaintiff submitted resignation letter providing two weeks' notice and noting that "if the environment to which [the plaintiff] was subjected had reached the required threshold of intolerability, she would have made her resignation effective immediately.").

Similarly, Plaintiff's allegations do not support a hostile work environment claim, since the alleged comments and conduct outlined above fall well short of the "severe or pervasive" standard

---

[14] Plaintiff admits that she never complained to *anyone* at Coach that she believed Beasley was discriminating against her on the basis of her purported disability or that she believed the above comments were evidence of discrimination, even though Plaintiff was well-versed in Coach's anti-harassment complaint procedures due to her HR Department background.  Plaintiff's failure to make a complaint during the eight-month period between her return from medical leave and her resignation militates strongly against her discrimination claims.  *See Mercury Air Grp., Inc. v. Perez*, No. 00 Civ. 2975(HB), 2001 WL 88228, at *4 (S.D.N.Y. Jan. 31, 2001) (granting summary judgment to employer on employee's constructive discharge claim and noting that "it is significant that Perez never attempted to bring what he apparently viewed to be a very serious problem to the attention of [his employer] . . . [particularly where he was] well versed in the procedures for communicating his concerns").

for such claims under federal anti-discrimination laws, or even under the NYCHRL's more

relaxed standard. *See, e.g., Newsome v. IDB Capital Corp.*, No. 13-CV-6576 (VEC), 2016 WL

1254393, at *14 (S.D.N.Y. Mar. 28, 2016) (supervisor calling plaintiff "jackass," "stupid," "idiot,"

"retard," "loser" and "lazy" did not give rise to viable hostile work environment claims where

comments were "indisputably race and religion neutral"); *Gonzalez v. N.Y.S. Office of Mental

Health*, 907 N.Y.S.2d 100, at 16 (Sup. Ct. 2010) (telling plaintiff that she was getting "so fat" and

presenting her with an unwelcome diet plan held insufficient to support pregnancy discrimination

claim under NYCHRL).

       As with Plaintiff's constructive discharge claim, Plaintiff cannot assert a viable hostile

work environment claim because there is no evidence in this record *whatsoever* that Beasley's

alleged comments or conduct had any relation to Plaintiff's purported disability.  Although

Plaintiff contends that Beasley's "tone of voice" and "body language" implied some sort of bias

towards her alleged medical condition, Plaintiff's highly subjective and self-serving spin on

Beasley's alleged tone and her speculation about Beasley's intent is insufficient to support a

constructive discharge claim or to defeat summary judgment of her discrimination claims,

particularly since none of Beasley's alleged comments reflect any disability-based animus.  *See

Johnson v. IAC/Interactive Corp.,* 2 F. Supp. 3d 504, 517 (S.D.N.Y. Feb. 24, 2014) (granting

employer's motion for summary judgment and dismissing plaintiff's hostile work environment

claim premised on "rude but racially-neutral comments delivered to [plaintiff] in a demeaning

tone")*; Peters v. Mt. Sinai Hosp.,* No. 08 Civ. 7250 (CM), 2010 WL 1372686, at *5, *10

(S.D.N.Y. Mar. 30, 2010) (holding that plaintiff's subjective determination that supervisor's tone

and body language were discriminatory was insufficient to establish a hostile work environment

claim and granting summary judgment to employer); *Wechsler v. R D Mgmt. Corp.,* 861 F. Supp.

1153, 1155-56, 1162 (E.D.N.Y. 1994) (employer entitled to summary judgment where plaintiff's

perception that interviewer's tone and facial expression were indicative of an anti-Semitic animus was insufficient to support her religious discrimination claim).  For all of these reasons, Plaintiff cannot show that she was constructively discharged, and she cannot establish a hostile work environment claim as a matter of law.

### B.  PLAINTIFF ALSO CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION

To the extent Plaintiff alleges she was discriminated against on any other basis, she cannot establish a *prima facie* case because the record shows that: (i) Beasley and Coach granted Plaintiff each and every accommodation she requested; (ii) Plaintiff enjoyed the same or better terms and conditions of employment after she requested such accommodations; and (iii) the circumstances of her employment and resignation do not support an inference of unlawful discrimination.[15]

#### 1.  It Is Undisputed That Coach Granted Plaintiff Each And Every Accommodation She Requested

Even assuming that Plaintiff was disabled under the ADA or the NYCHRL,[16] it is undisputed that Coach promptly provided Plaintiff with every accommodation she requested.  In

---

[15] Courts review employment discrimination claims under the evidentiary framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that: (i) she belongs to a protected class; (ii) she performed her duties satisfactorily; (iii) she experienced an adverse employment action; and (iv) such adverse action occurred under circumstances giving rise to an inference of discrimination.  *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).  If she does so, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action under review.  *See McDonnell Douglas*, 411 U.S. at 802.  Once the employer sets forth a non-discriminatory basis for its action, any presumption of discrimination "drops out of the picture," and the burden shifts to the plaintiff to demonstrate pretext.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).  Importantly, to prevail, a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason" for the challenged employment action.  *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (internal quotation marks omitted).  Therefore, "[a] defendant [is] entitled to summary judgment unless the plaintiff 'can point to evidence that reasonably supports a finding of prohibited discrimination.'"  *Turner v. NYU Hosp. Ctr.*, 784 F. Supp. 2d 266, 276 (S.D.N.Y. 2011).  "[T]he Second Circuit has established that discrimination claims under the… NYCHRL are subject to the same burden-shifting framework that the Supreme Court articulated in McDonnell Douglas for Title VII claims."  *Barounis v. N.Y.C. Police Dep't*, No. 10 Civ. 2631 (SAS), 2012 WL 6194190, at *10 (S.D.N.Y. Dec. 12, 2012) (internal quotation marks and citations omitted).

[16] Coach assumes for purposes of this Motion that Plaintiff can show that she was disabled within the meaning of the ADA and the NYCHRL.  It reserves the right to challenge Plaintiff's disability status, however, as well as the purported expert opinion of Plaintiff's medical experts in this matter, if necessary.

fact, Plaintiff admits that Coach immediately granted her request for a leave of absence from October 12, 2014 to November 16, 2014.  (56.1 Stmt. ¶ 143).  Plaintiff further admits that Coach granted her subsequent request for a modification of her work schedule to attend outpatient treatment from December 2014 until her resignation over eight months later.  (56.1 Stmt. ¶¶ 151-52).  In addition, there is no evidence that Coach or Beasley ever prevented or discouraged Plaintiff from seeking treatment for her condition at any time, or that Plaintiff ever missed a treatment session because of Beasley's alleged conduct.  Accordingly, Plaintiff does not, and cannot, dispute that Coach reasonably accommodated her at all times in satisfaction of its obligations under the ADA and the NYCHRL.  *See Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 294-95 (E.D.N.Y. 2010) (granting employer's motion for summary judgment and dismissing employee's disability discrimination claim where employer granted plaintiff's requested reasonable accommodations).

## 2.   Plaintiff Did Not Experience Any Adverse Employment Actions That Would Arguably Substantiate A Discrimination Claim

Plaintiff also cannot establish a *prima facie* case of discrimination because the overwhelming and undisputed evidence shows that Plaintiff did not experience any adverse employment actions following her voluntary disclosure of her alleged disability, leave of absence and subsequent outpatient treatment.  Indeed, Plaintiff's terms and conditions of employment either stayed the same *or improved* after she disclosed her alleged disability and was granted the accommodations she requested.  Significantly, Plaintiff admits she retained the same job title, salary and benefits when she returned from leave and that Beasley awarded her an annual bonus for 2015 that was more than double the bonus she received prior to her leave of absence in 2014.  (56.1 Stmt. ¶ 169).

The record also shows that Beasley treated Plaintiff exactly the same before and after her leave of absence. For example, Plaintiff admits that Beasley gave her the same satisfactory performance evaluation rating in 2014, before Plaintiff's leave of absence, as she did in 2015, after Plaintiff's leave of absence. (56.1 Stmt. ¶¶ 167-68). Although Plaintiff alleges that Beasley somehow discriminated against her by insisting that Plaintiff inform her verbally whenever Plaintiff needed to leave the office to attend outpatient treatment services (Stoler Decl., Ex. A), Plaintiff admits that Beasley made this request well before Plaintiff disclosed her alleged disability, took a leave of absence or requested a modified schedule to attend outpatient treatment sessions. (56.1 Stmt. ¶¶ 52, 153).[17] Beasley's consistent treatment of Plaintiff and appraisal of her performance, both before and after she learned of Plaintiff's substance abuse issues, belies Plaintiff's claim that she was punished or harassed in any way because of her alleged disability. *See, e.g., Pikoris v. Mt. Sinai Med. Ctr.*, No. 36 Civ. 1403 (JEK), 2000 WL 702987 (S.D.N.Y. May 30, 2000) (employee's ADA and state law disability discrimination claims dismissed where supervisors rated plaintiff's job performance in the same manner before and after a medical leave of absence).

### 3.   The Circumstances Do Not Support An Inference Of Unlawful Discrimination

Finally, Plaintiff cannot establish a *prima facie* case because the circumstances surrounding Plaintiff's voluntary resignation do not support an inference of discrimination. First, even assuming, *arguendo*, that Beasley made all of the comments Plaintiff alleges, none of those comments support an inference of disability discrimination. At most, Beasley's alleged comments are merely innocuous statements that Plaintiff baselessly speculated were made in reference to her

---

[17] Although Plaintiff alleges she "told Beasley that it was embarrassing to have to interrupt a meeting to remind her that she was leaving for rehab" (Stoler Decl., Ex. A), Plaintiff admits that Beasley never required her to state the reason she was leaving the office. *Id*. Beasley only asked that Plaintiff keep her informed. *Id*. Therefore, any suggestion that Beasley required Plaintiff to announce her departure to shame Plaintiff or frustrate her from going to outpatient treatment is completely unfounded.

alleged disability.  In fact, Plaintiff admitted that such comments were never uttered in connection

with her substance abuse issues or the accommodations she received:

> Q.   [By Mr. Stoler]: The comments that you contend [Beasley] made to you after your
> return from your leave of absence, comments such as "Are you okay? Is everything
> all right?  Is there anything going on with you?  You're letting everything fall apart.
> You have a lot of personal issues," and "Who knows how much of that had an
> effect on your performance problems," those comments that she made you, she
> didn't tie any of those comments specifically to your leave of absence or your
> substance abuse problems, did she?
>
> A.   [By Ms. Dineley]: No.  She just said those things.
>
> Q.   So it was your opinion that those comments that I just reviewed related in some
> way to your leave of absence or your substance abuse problems, correct?
>
> A.   It was very clear that's what it meant, but . . .
>
> Q.   That was your opinion, right?
>
> A.   Yes.

(56.1 Stmt. ¶ 159).  Plaintiff's conclusory and speculative *opinions* regarding the meaning behind

Beasley's alleged comments are simply insufficient to support an inference of discrimination or to

defeat summary judgment.  *See Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) ("conclusory

allegations or speculation" are insufficient to defeat a motion for summary judgment); *Shafer v.*

*Am. Univ. in Cairo*, No. 12-CV-9439 (VEC), 2014 WL 3767007, at *14 (S.D.N.Y. July 31, 2014)

(holding that mere conclusory allegations of discrimination in support of NYCHRL claim are

insufficient to withstand a motion for summary judgment).[18]

---

[18] Although the NYCHRL has slightly different standards and must be analyzed separately from the ADA and other
federal and state anti-discrimination laws, claims under the NYCHRL must still be dismissed where there is no
evidence from which an inference of discrimination could reasonably be drawn.  *See Lugo v. City of New York*, 518 F.
App'x 28, 30 (2d Cir. 2013); *Mayling Tu v. OppenheimerFunds, Inc.*, No. 10 Civ. 4971(PKC), 2012 WL 516837, at
*8 (S.D.N.Y. Feb. 16, 2012) ("Separately reviewing plaintiff's discrimination claim under the NYCHRL, plaintiff has
not set forth evidence to show that [defendants] discriminated against her on the basis of race, sex or national origin. .
. . Summary judgment is therefore granted . . . .") (internal citation omitted); *see also Farzan v. Wells Fargo Bank,*
*N.A.*, No. 12 Civ. 1217(RJS)(JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) ("Notwithstanding th[e] lower
threshold, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to . . . defeat . . .
summary judgment" (internal quotation marks omitted)).

At most, the record shows that Beasley was a demanding boss, which Plaintiff admittedly noted at the outset of her employment in the Design Department, well before Plaintiff ever disclosed her substance abuse issues. (56.1 Stmt. ¶ 55). Indeed, Plaintiff expressed her reluctance to work with Beasley as early as April 2014, six months *before* Plaintiff disclosed her alleged disability and commenced her leave of absence, when she told an HR Department representative that she was having a "hard time" with Beasley and wanted to work for another executive. (56.1 Stmt. ¶ 56). Accordingly, while Plaintiff may not have liked working with Beasley or appreciated Beasley's management style, Plaintiff's subjective feelings are insufficient to support her discrimination claims.[19] *See e.g., Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (in a Title VII case, holding that "[a]busive conduct in the workplace, if not based on a protected class, is not actionable . . . [The] statute prohibits discrimination, and is not a civility code.") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).[20]

The circumstances of Plaintiff's employment immediately prior to her resignation further belie any inferences of discrimination. The record shows that just days before her resignation, Plaintiff received a satisfactory rating of her performance from Beasley and was awarded a 2015 bonus payment of $10,708.71, which was more than double her 2014 bonus. (56.1 Stmt. ¶ 169). Moreover, Plaintiff admits she stated during her exit interview that she was resigning only because she was unhappy with her 2015 performance review and she no longer wished to report to

---

[19] The record also shows that Beasley routinely complimented Plaintiff's work, and offered her friendship and support before and during Plaintiff's leave of absence, and even through her last days of employment with Coach. (56.1 Stmt. ¶¶ 160-66).

[20] *See also Lewis v. City of Buffalo Police Dep't*, 311 F. App'x 417, 421-22 (2d Cir. 2009) ("supervisor occasionally refer[ring] to [plaintiff] by vulgar or derogatory names" was not actionable under anti-discrimination statutes); *Johnson v. City Univ. of N.Y.*, No. 17-CV-587 (VEC), 2014 WL 4412475, at *1 (S.D.N.Y. Sept. 8, 2014) (granting summary judgment dismissing discrimination claims; "those treated unfairly for reasons other than their membership in a protected class, must look outside Title VII [and its analogs] to secure what may be their fair due."); *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000) ("Title VII . . . does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors.").

Beasley, not because she believed she was being discriminated against for any reason. (56.1 Stmt. ¶¶ 175-76). Accordingly, because Plaintiff fails to adduce any evidence that Beasley or anyone else treated her differently due to her alleged disability, or that she resigned because of any alleged discrimination, her claims under the ADA and NYCHRL must be dismissed.

###### C.   EVEN IF PLAINTIFF COULD ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION, SHE CANNOT REBUT COACH'S LEGITIMATE, NON-DISCRIMINATORY BUSINESS REASONS FOR ITS ACTIONS

Even if Plaintiff could somehow establish a *prima facie* case of discrimination based on Beasley's requirement that Plaintiff notify her of when Plaintiff was leaving for the day (or any of the other alleged changes to Plaintiff's terms and conditions of employment), the undisputed evidence shows that Beasley had legitimate business reasons for issuing this directive; namely, Beasley testified that she required Plaintiff to check in so Beasley and Plaintiff could share pertinent information with one another before the start of the next business day. (56.1 Stmt. ¶ 52). As set forth above, to defeat summary judgment, Plaintiff must show that Beasley's stated reasons are false and that she was really motivated by unlawful discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 510-11; *Hongyan Lu*, 412 F. App'x at 416. Because Plaintiff cannot rebut Coach's legitimate, non-discriminatory reasons for its employment decisions, she cannot meet these evidentiary burdens. This is particularly true here, since the record is undisputed that Beasley required Plaintiff to provide notice of her departure well before Plaintiff ever disclosed her alleged disability or requested medical leave. (56.1 Stmt. ¶¶ 52, 153). Coach's summary judgment motion should therefore be granted in its entirety.

## CONCLUSION

For the reasons set forth above, this Court should grant Defendant's Motion for Summary Judgment in all respects and provide such other and further relief, including attorneys' fees and costs, as this Court deems just and proper.

Dated: New York, New York        Respectfully submitted,
      December 16, 2016
                                **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

                                By:   /s/ Jonathan Stoler
                                       Jonathan Stoler
                                       Lindsay Colvin
                                       Scott T. Earl
                                       30 Rockefeller Plaza
                                     New York, NY 10112-0015
                                     Tel:  (212) 653-8700
                                     Fax:  (212) 653-8701

                                     *Attorneys for Coach, Inc.*